# 98 DTA 229

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL I DE SAN JUAN
### PANEL IV

SRA. ZOE MATILDE ORTEGA RODRIGUEZ, POR SI Y JUNTO A JOSE R. CASTRO PIÑERO Y LA SOCIEDAD LEGAL DE GANANCIALES POR AMBOS COMPUESTA
Apelantes

v.

ARDIN TERON, POR SI Y COMO DIRECTOR EJECUTIVO DEL CONSEJO DE DESARROLLO OCUPACIONAL Y RECURSOS HUMANOS DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO; ARDIN TERON, POR SI Y JUNTO A JANE DOE Y LA SOCIEDAD LEGAL DE GANANCIALES POR AMBOS COMPUESTA; LA SRA. GRISEL BEAUCHAMP, POR SI Y COMO SUPERVISORA DEL CONSEJO DE DESARROLLO OCUPACIONAL Y RECURSOS HUMANOS DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO; GRISEL BEAUCHAMP, POR SI Y JUNTO A JOHN DOE Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; RICHARD DOE; ESTADO LIBRE ASOCIADO DE PUERTO RICO P/C HON. SECRETARIO DE JUSTICIA
Apelados

Núm. KLAN-98-00389

San Juan, Puerto Rico, a 26 de agosto de 1998

Panel integrado por su Presidenta, la Juez López Vilanova,
el Juez Cordero y la Juez Feliciano Acevedo

Feliciano Acevedo, Juez Ponente

## I

La apelante, señora Zoe Matilde Ortega Rodríguez (Ortega), nos solicita la revocación de la sentencia parcial que fuera dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 4 de mayo de 1998. Mediante dicho dictamen se declaró con lugar una solicitud de desestimación presentada por los entonces demandados y hoy apelados, Ardin Terón (Terón) y Grisel Beauchamp (Beauchamp), en atención a que la demanda, incoada contra éstos en su carácter personal, no presentaba una reclamación que justificara la concesión de un remedio y a que Terón y Beauchamp, quienes se desempeñaban como funcionarios públicos, se encontraban protegidos por la doctrina de inmunidad condicionada.

Ante los hechos y por los fundamentos expuestos más adelante, se confirma la sentencia apelada.

## II

El 8 de septiembre de 1997, Ortega, su esposo José R. Castro Piñero y la sociedad legal de gananciales compuesta por ambos instaron demanda por alegado discrimen en el empleo contra Terón (Terón), por sí y como Director Ejecutivo del Consejo de Desarrollo Ocupacional y Recursos Humanos del Estado Libre Asociado de Puerto Rico (el Consejo), y contra Beauchamp, por sí y como supervisora del mencionado Consejo. Ambos funcionarios se desempeñaban como superiores de Ortega en la mencionada agencia gubernamental. Asimismo fueron demandadas las sociedades legales de gananciales compuestas por dichos funcionarios y sus respectivos cónyuges.

Surge de las alegaciones de la demanda que en 1996 y tras Ortega haber arribado de sus vacaciones por maternidad, ésta vio reducidas y posteriormente hasta eliminadas sin explicación, aviso o directriz alguna sus funciones como Técnico de Administración IV en la División de Monitorías del Consejo. Igual situación se produjo un año después, cuando tras haberse reclasificado su puesto al de Monitor de Proyectos, también se le privó sin previa notificación o explicación alguna de realizar las correspondientes funciones que, según alega, son propias de dicho cargo. Ortega, quien era una empleada de carrera, se limitó a decir que las mismas estaban siendo realizadas por otras personas y entidades contratadas por el Consejo.

Tras una serie de trámites procesales, el 22 de diciembre de 1997, Ortega y los demás demandados solicitaron permiso, y así lo obtuvieron, para enmendar la demanda a los efectos de incluir como demandado al Estado Libre Asociado.

Los reclamantes catalogaron las acciones de los demandados como unas *"discriminatorias"*, *"arbitrarias"* e *"irracionales"* en abierta violación, según se adujo, a las secciones 1 y 7 del Artículo II de la Constitución de Puerto Rico; mas no precisaron de qué tipo era y en qué consistía especificamente el alegado discrimen contra ésta. Tampoco se alegó ni demostró qué derecho tenía, si alguno, respecto a las funciones de las que dice fue privada. No obstante, se planteó que el despojar a Ortega de sus funciones constituia una violación a su dignidad humana y al debido proceso de ley.

Entre otros remedios, Ortega y los demás demandantes reclamaron la cantidad de $75,000 como indemnización y que le fueran restituidas las funciones de las que habían sido privados.

Una vez presentada la demanda contra Terón y Beauchamp en su carácter personal, éstos solicitaron del Estado mediante el Secretario de Justicia que asumiera su representación legal. Ley Núm. 9 de 26 de noviembre de 1975, 32 L.P.R.A. sec. 3085. Tras aprobarse la referida solicitud, el Procurador General presentó una moción de desestimación fundamentada en que la reclamación no justificaba la concesión de un remedio y en que los funcionarios demandados se encontraban protegidos por la doctrina de inmunidad condicionada.

Mediante resolución dictada el 20 de enero de 1998 y notificada el día 22 del mismo mes y año, el Tribunal le concedió a los demandantes quince (15) días para replicar. No habiendo éstos reaccionado dentro de dicho término, el Tribunal entendió que se allanaban a lo planteado en la moción de desestimación, por lo que dictó sentencia parcial desestimando la demanda en cuanto a Terón y Beauchamp en su carácter personal.

Inconforme, Ortega apeló ante nos se imputó al Tribunal de Primera Instancia la comisión de los siguientes errores:

"A. Erró el Honorable Tribunal de Primera Instancia al dictar sentencia parcial a favor de los co-demandados y desestimar la demanda incoada contra éstos en su carácter personal, por el hecho de la parte demandante no haberse expresado en 15 días en torno a una moción de desestimación y por entender que la alegada inacción de la parte demandante constituia un allanamiento ante la moción de desestimación.

B. Erró el Honorable Tribunal de Primera Instancia al dictar sentencia parcial a favor de los co-demandados y desestimar la demanda incoada contra éstos en su carácter personal, por el hecho de la parte demandante no haberse expresado en 15 días en torno a una moción de desestimación, cuando el Tribunal tan siquiera apercibió a la parte demandante de las consecuencias de un posible incumplimiento de las órdenes del Tribunal y cuando tan siquiera tomó en consideración otras medidas disponibles para esa situación y que eran menos lesivas a los derechos de la parte demandante.

C. Erró el Honorable Tribunal de Primera Instancia al dictar sentencia parcial a favor de los co-demandados y desestimar la demanda incoada contra éstos en su carácter personal, basado en las razones consignadas en la moción de desestimación en las que se alegaba que los co-demandados Ardin Terón y Grisel Beauchamp no respondían en su carácter personal por estar éstos amparados por la doctrina de la inmunidad condicionada."

Presentado ante nos el correspondiente alegato del Procurador General, procedemos a resolver.

### III
### Respecto a la moción de desestimación

La Regla 10.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III (R. 10.2), faculta a una parte a solicitar del tribunal la desestimación de una demanda instada en su contra cuando, entre otras cosas, se alega como defensa que la misma deja de exponer una reclamación que justifique la concesión de un remedio.

La jurisprudencia aplicable a esta norma señala que a los fines de disponer de una moción de desestimación, el foro judicial viene obligado a dar por ciertas y buenas todas las alegaciones fácticas contenidas en la demanda. *Pressure Vessels v. Empire Gas,* 139 D.P.R. ___ (1994), **94 J.T.S. 144,** pág. 431; *First Federal Savings v. Asociación de Condómines,* 114 D.P.R. 426, 431-432 (1983). No obstante, esta doctrina se aplica solamente a los hechos bien alegados y expresados de manera clara y concluyente, de cuya faz no se de margen a dudas. *Unisys v. Ramallo Brothers Printing, Inc.,* 129 D.P.R. ___ (1991), **91 J.T.S. 69,** pág. 8856. El deber del foro sentenciador no es determinar los méritos finales de la reclamación con el propósito de decidir cuál de las partes habría de prevalecer, sino más bien considerar si a la luz de la situación más favorable al demandante y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida. *Colón v. San Patricio Corp.,* 81 D.P.R. 242, 266 (1959).

### IV
### En cuanto a la doctrina de inmunidad condicionada

La doctrina de inmunidad condicionada protege a los funcionarios gubernamentales del pago de daños en circunstancias en que se alega que los derechos constitucionales de los demandantes han sido violados por el funcionario público. La referida doctrina es de creación judicial y sus contornos se delinean en varias opiniones emitidas por el Tribunal Supremo Federal a partir del año 1967. Las bases de la misma se centran en principios del derecho de daños y en consideraciones de política pública. H.Nahmod, *Civil Rights and Civil Liberties,* 2da.ed., Cap. 8, 1986; Eisenberg, *Civil Rights Legislation,* Cap. 3, 1981. Al igual que en los casos donde rige la doctrina de la inmunidad absoluta, la inmunidad condicionada representa un balance entre el interés de la sociedad en compensar los daños sufridos por sus miembros como consecuencia de una acción gubernamental --que implique violación a los derechos constitucionales de una persona-- y el también interés público en evitar que

funcionarios gubernamentales se sientan amedrentados en el desempeño de sus funciones por temor a ser demandados en daños.

Respecto a este punto en particular, se expresó lo siguiente en *Greagrie v. Biddle,* 177 F.2d 579, 581 (2do Cir. 1949):

*"It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties - such suits would consume time and energies which would otherwise be devoted to governmental service and the threat of which might apparrently inhibit the fearless, vigorous, and effective administration of policies of government."*

En lo pertinente a autos, tenemos que el Tribunal Supremo Federal se pronunció en *Scheur v. Rhodes,* 416 U.S. 234, págs. 247 y 248 (1974), en cuanto a la correlación existente entre el grado y el nivel de las responsabilidades de un funcionario gubernamental y el alcance de la inmunidad condicionada que le protege:

*"...in varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct".*

Aquí en Puerto Rico el Tribunal Supremo acogió la doctrina de inmunidad condicionada y le extendió su protección a los jueces ante aquellas reclamaciones en daños que fueran radicadas contra su persona al amparo del Art. 1802 del Código Civil y como producto de su desempeño judicial. No obstante, dicha inmunidad se encuentra precisamente condicionada a que el juez en cuestión no haya incurrido en actuaciones dolosas, fraudulentas, maliciosas o delictivas en el descargo de sus funciones. *Feliciano Rosado v. Matos Jr.,* 110 D.P.R. 550, 566-569 (1981). En iguales términos se hizo aplicable la mencionada doctrina al Ministerio Público y al Secretario de Justicia en cuanto al desempeño de éstos en la radicación y el procesamiento de causas criminales. *Romero Arroyo v. E.L.A.,* 127 D.P.R. 724, 742 y 743 (1991).

En este último caso nuestro más alto foro aclara que la inmunidad de los funcionarios públicos no se deriva de la mencionada inmunidad del soberano, sino en consideraciones de política pública. Ello quiere decir que la concesión de inmunidad a un funcionario del Estado sólo tiene el efecto de eximir de responsabilidad civil a dicho funcionario en su carácter individual; dejando intacta la responsabilidad y la renuncia del Estado a ser demandado por los daños que ocasionen los actos culposos o negligentes de sus empleados. *Id.,* págs. 745-747.

En lo que respecta a los funcionarios de la rama ejecutiva, la doctrina de inmunidad condicionada representa la norma y no la excepción. Aquel funcionario gubernamental que desarrolle funciones discrecionales se verá exento de responsabilidad por daños civiles en la medida en que su conducta no haya violado derechos estatutarios o constitucionales claramente establecidos, de los que una persona razonable debió haber conocido. *Harlow v. Fitzgerald,* 457 U.S. 800, pág. 818 (1982).

## V

En el caso de autos hemos examinado detenidamente todas y cada una de las numerosas y, en su mayor parte, más que extensas alegaciones presentadas en la demanda concluyendo que, a pesar de ser éstas así, no se desprende de las mismas de qué manera y desde qué punto de vista discriminaron y/o fueron, alegadamente, arbitrarios en el empleo los apelados Terón y Beauchamp contra Ortega.

Si bien se destaca en el mencionado escrito, en más de una ocasión, que Ortega se vio privada de sus funciones regulares y que las mismas le fueron asignadas a otras personas contratadas, no se precisa ni se demuestra si ello obedeció a motivaciones políticas, religiosas, o tal vez ligadas al sexo, raza, nacimiento o condición social de la demandante. Art. II, sec. 1 de la Constitución del Estado Libre Asociado de Puerto Rico. Tampoco surge con claridad qué derecho tenía ésta, si es que

realmente lo tenía, en cuanto a las funciones específicas de las que, según reclama, fue privada de forma alegadamente arbitraria e irracional.

Ante todo este cuadro caracterizado por alegaciones generales y demasiado extensas, así como conclusivas y carentes de los elementos suficientes para acreditar la posible violación de los derechos constitucionales invocados por Ortega, era obvio que tenían, indiscutiblemente, que prevalecer Terón y Beauchamp, quienes sí gozaban como lo hemos visto de un claro, específico y reconocido derecho a la inmunidad condicionada.

Determinado así que la reclamación en controversia no justificaba la concesión de un remedio y que los funcionarios gubernamentales Terón y Beauchamp se encontraban ciertamente protegidos por la doctrina de inmunidad condicionada, resulta absolutamente innecesario discutir los planteamientos ofrecidos por la apelante mediante el primer y segundo señalamiento de error.

Por los fundamentos antes expuestos se confirma la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 4 de marzo de 1998.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General